**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ZLOCK, P.C., | : | |
| | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **NO. 20-2585** |
| CONTINENTAL CASUALTY | : | |
| COMPANY, | : | |
| | : | |
| Defendant. | : | |

**Goldberg, J.**                                                          **March 30, 2021**

<u>**MEMORANDUM OPINION**</u>

Governmentally-imposed shutdown orders and limitations on customer capacity to alleviate the spread of the COVID-19 virus have taken a toll on businesses across the United States. Many of these businesses have turned to their insurance companies for help, seeking coverage for their business losses.

Plaintiff Zlock, P.C., a law firm that was forced to close during the pandemic, has requested and been denied coverage from its insurer, Defendant Continental Casualty Company. Plaintiff now seeks a declaratory judgment, with no additional claim for legal relief, on this issue of purely state law. Defendant has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

While neither party contests the Court's jurisdiction, for the reasons that follow, I will decline to exercise jurisdiction over this declaratory judgment matter and will dismiss the Complaint without prejudice to Plaintiff's right to refile in state court.

## I.    FACTS IN THE COMPLAINT

The following facts are set forth in the Complaint:[1]

---

[1]    In deciding this motion, I will accept all factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff.

A.      **The Insurance Policies**

Plaintiff Zlock, P.C. is a law firm specializing in family law and divorce matters such as alimony, child custody, and child support.  On February 1, 2020, Plaintiff entered into an insurance contract (the "Policy") with Defendant Continental Casualty Company for coverage of, among other things, business income losses at both Plaintiff's primary location at 777 Township Line Road, Yardley, Pennsylvania 19067, and an additional location at 123 North Broad Street, Floor 1, Doylestown, Pennsylvania 18901.  The Policy was in full force and effect from February 1, 2020 to February 1, 2021, and it is not contested that Plaintiff timely paid all premiums.  (Compl. ¶¶ 11–15.)

The Policy is an "all-risk" policy and extends to (a) the actual loss of business income sustained, and (b) the actual, necessary, and reasonable extra expenses incurred when access to the law firm is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property in the immediate area.  The Policy also includes an endorsement that states, "[w]e will pay for loss or damage by 'fungus, wet rot, dry rot, and microbes,'" and contains no specific exclusion for virus coverage.  (Id. ¶¶ 16–17, 19.)

B.      **The Loss**

As a result of the coronavirus pandemic, on March 6, 2020, Pennsylvania Governor Tom Wolf issued a Proclamation of Disaster Emergency.  Thereafter, on March 19, 2020, Governor Wolf issued an Order requiring all non-life-sustaining businesses in the Commonwealth to cease operations and close all physical locations.  Businesses that were permitted to remain open were required to follow "social distancing practices and other mitigation measures defined by the Centers for Disease Control."  All law firms, deemed non-life-sustaining businesses, were required to close.  (Id. ¶¶ 21, 25–26.)

On March 23, 2020, Governor Wolf issued a Stay-at-Home Order for various counties in Pennsylvania, including Bucks County, where Plaintiff's firm is located.  On April 1, 2020, the

2

Governor extended that Order to the entire Commonwealth of Pennsylvania.  In conjunction with these orders, the Bucks County Department of Consumer Protection issued a press release warning that any businesses operating in violation of Governor Wolf's directions would face enforcement actions.  On April 20, 2020, Governor Wolf extended the Stay-at-Home Order to May 8, 2020 for the entire Commonwealth of Pennsylvania.  (Id. ¶¶ 27–30.)

Due to these Orders, Plaintiff shut its office doors on March 13, 2020, and, as of the filing of the Complaint, it continued to be shut down.  Plaintiff's business is not a closed environment, and because people—including staff, clients, delivery personnel, and others—constantly cycle in and out of the office, there is an ever-present risk that the office is contaminated.  Since the required shut-down, Plaintiff has been unable to meet and sign up new clients, initiate new lawsuits on behalf of current and potential clients, adequately prepare witnesses, move cases forward, take depositions in its family law cases, and/or collect fees from clients.  (Id. ¶¶ 36–38.)

On June 1, 2020, Plaintiff filed suit seeking a declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), that:  (1) the Civil Authority Orders trigger business interruption coverage under the Policy; (2) the Policy provides Coverage for any current and future Civil Authority closures of law offices in Bucks County related to the coronavirus; and (3) the Policy provides business income coverage in the event of closures due to the coronavirus.

## II.    DISCUSSION

The sole claim for relief arises under the Declaratory Judgment Act, which provides that district courts "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a) (emphasis added).  If a plaintiff asserts both a claim for declaratory relief together with an independent claim seeking legal relief, "the court has a virtually unflagging obligation to hear those claims . . ."  Rarick v. Federated Serv. Ins. Co., 852 F.3d 223, 229 (3d Cir. 2017) (internal quotations omitted).  Where,

however, the plaintiff asserts only a claim for declaratory relief, "the court retains discretion to decline jurisdiction of the entire action." Id.  Indeed, the United States Court of Appeals for the Third Circuit has expressly held that, in an action seeking only declaratory relief, a district court may decline jurisdiction *sua sponte* under the Declaratory Judgment Act.  Reifer v. Westport Ins. Corp., 751 F.3d 129, 148 (3d Cir. 2014); see also Impala Platinum Holdings Ltd. v. A-1 Specialized Servs. & Supplies, No. 16-1343, 2016 WL 8256412, at *23 (E.D. Pa. Sept. 16, 2016).

To determine whether to exercise jurisdiction over an action solely seeking declaratory relief, the Third Circuit, in Reifer v. Westport Ins. Co., supra, set forth a non-exhaustive list of factors for district courts to consider.  These factors include: (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of obligation; (4) the availability and relative convenience of other remedies; (5) a general policy of restraint when the same issues are pending in a state court; (6) avoidance of duplicative litigation; (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and (8) in the insurance context, an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.  Reifer, 741 F.3d at 146.  The Third Circuit has remarked, in particular, that where the primary issue raised is one of state law and "[w]here state law is uncertain or undetermined, the proper relationship between federal and state courts requires district courts to 'step back' and be 'particularly reluctant' to exercise [Declaratory Judgment Act] jurisdiction." Id. at 148.

At least three of my colleagues from this District Court have addressed the exercise of Declaratory Judgment Act jurisdiction in cases involving insurance coverage for business income losses due to the COVID-19 pandemic.  All have declined to maintain jurisdiction.

4

In <u>V&S Elmwood Lanes, Inc. v. Everest National Insurance Company</u>, No. 20-3444, 2021 WL 84066 (E.D. Pa. Jan. 11, 2021), the plaintiff sought a declaration that it was entitled to coverage under its insurance policy for losses caused by the COVID-19 pandemic.  <u>Id.</u> at *1.  The Honorable Jan E. DuBois considered the <u>Reifer</u> factors and declined to exercise jurisdiction.  <u>Id.</u> at *2.  Judge DuBois found that, under factor three—the public's interest in resolving the uncertainty of obligations giving rise to the parties' dispute—courts "should hesitate to entertain a declaratory judgment action where the action is restricted to issues of state law," especially where the declaratory judgment action "presents novel and unsettled state law issues."  <u>Id.</u> at *3–4 (quoting <u>Atl. Mut. Ins. Co. v. Gula</u>, 84 F. App'x 173, 174 (3d Cir. 2003)).  As Pennsylvania courts had yet to develop a body of caselaw on these state law issues due to the relative recency of the COVID-19 pandemic, Judge DuBois found retention of jurisdiction was imprudent.  <u>Id.</u> at *4.  Turning to factor five— whether the same issues are pending in a state court—Judge DuBois noted that the issue of whether an insured is entitled to insurance coverage for losses caused by COVID-19 was currently pending in multiple cases circulating through the Pennsylvania state courts.  <u>Id.</u>

In <u>I2I Optique LLC v. Valley Forge Insurance Company</u>, No. 20-cv-3360, 2021 WL 268645 (E.D. Jan. 27, 2021), the Honorable Gerald A. McHugh considered the exercise of jurisdiction under the Declaratory Judgment in a case seeking insurance coverage for business losses from the COVID-19 pandemic.  <u>Id.</u> at *1.  Judge McHugh remarked that Arizona law, which applied to the coverage dispute, was unsettled regarding the meaning of the insurance term "physical loss" and whether COVID-19 related losses fell within the scope of that provision.  <u>Id.</u> at *3.  He concluded that "the absence of a settled body of case law in Arizona weigh[ed] heavily in favor of jurisdiction."  <u>Id.</u> at *4.  Turning his focus to the <u>Reifer</u> factors, Judge McHugh held that factor three—the public interest in settlement of the uncertainty of obligation—weighed against the exercise of jurisdiction because (a) the Arizona courts were better equipped to inquire into Arizona legislative goals and legislative

policy in this unique coverage dispute, and (b) a federal district court's predictive action would have no binding effect on state courts.  Id. at *5.  Judge McHugh also opined that Reifer factors five and six—the existence of pending litigation in state courts and the potential for duplicative litigation— weighed in favor of declining jurisdiction because a number of cases based on the same contract language were "in play" in Arizona state courts and could result in inconsistent outcomes.  Id. at *6. Concluding the remaining factors bore little weight, Judge McHugh "join[ed] the numerous district courts in this circuit that have found it most appropriate to 'step back' and allow state courts to decide these critical issues."  Id. at *7.

Most recently, in Jul-Bur Associates, Inc. v. Selective Insurance Company of Am., No. 20-cv-1977, 2021 WL 515484 (E.D. Pa. Feb. 11, 2021), the Honorable Gene E.K. Pratter addressed jurisdiction in a declaratory judgment suit by a Pennsylvania business seeking entitlement to insurance coverage for losses from COVID-19 closure orders.  Considering the Reifer factors, Judge Pratter determined that factors one, three, and five weighed in favor of not exercising jurisdiction over the case.  Id. at *3.  As to factor one—the likelihood that a federal declaration will resolve the uncertainty of obligation which gave rise to the controversy—Judge Pratter noted that Pennsylvania's appellate courts had not yet articulated the contours of COVID-19-related insurance coverage, including addressing whether "direct physical loss" in the context of commercial insurance policies covered the sorts of business losses related to COVID-19 closure orders.  Id.  For factor three—the public interest in settlement of the uncertainty of litigation—Judge Pratter found that the public interest would not be well served by the federal courts deciding the insurance coverage issue when the state courts, with their expanded familiarity with Pennsylvania law and public policy, could "equally well decide the issue."  Id.  (internal quotation omitted).  Finally, as to factor five— a general policy of restraint when the same issues are pending in a state court—Judge Pratter noted that numerous cases presenting the identical coverage issues are currently pending in Pennsylvania

state courts.  Id. at *4.  She remarked that, "[t]o the extent the Court can avoid a potentially inconsistent decision with those reached by state courts, it will step back and refrain from adding a square to an already disjointed patchwork of decisions." Id.  Finding that the remaining factors were either neutral or inapplicable, Judge Pratter agreed with the numerous other courts that "the singular challenges posed by the COVID-19 pandemic and the resulting legal challenges that implicate state insurance law and by extension, public policy, are best reserved to the Commonwealth's appellate courts." Id. at *5.

Here, the precise Reifer factor concerns at issue in the three cases discussed above are directly implicated and weigh against the exercise of jurisdiction over the present dispute.  Under factor one, the questions at issue here are grounded entirely in state law, and, to date, no state appellate court has yet addressed the issue.  Thus, a federal court declaration which is merely predictive of state law and public policy will not definitively resolve the uncertainty of coverage obligations which give rise to this controversy.  Factor five also weighs against the exercise of jurisdiction because of the numerous cases with identical issues pending in state court.  See https://cclt.law.upenn.edu/ (last visited Feb. 26, 2021).  As the issues are founded in state law, federal restraint is encouraged.  Finally, factor six suggests that avoidance of duplicative, and potentially contradictory rulings on these issues warrants a refusal to exercise jurisdiction.  The remaining factors two, four, seven, and eight bear only slightly, if at all, on my analysis.

Cognizant of the many cases presenting almost identical issues, which are currently working their way through the state courts, I will exercise my discretion to decline jurisdiction over this matter.  Plaintiff may refile this case in state court.

An appropriate Order follows.